In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00533-CR


 ____________________



JARED CHEYENNE TALLEY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 07-08-08366 CR 






MEMORANDUM OPINION



 Jared Cheyenne Talley was charged with possession of methamphetamine. After the
trial court denied Talley's motion to suppress, he pled guilty. The trial court sentenced him
to two years in prison. 

 The motion to suppress challenged the deputies' entry into the apartment and seizure
of evidence. In this appeal, Talley attacks the denial of the motion, as the law permits him
to do, despite his guilty plea. See Tex. R. App. P. 25.2(a)(2)(A).

 The Hearing


 At the hearing on the motion, Officer Degner testified Talley was on Montgomery
County's most-wanted list. Degner had felony and misdemeanor warrants for Talley. 
Degner learned Talley might be in the county. A woman reported that a gun had been
pointed at her brother. She identified two men with whom Degner "was familiar," and she
described the suspects' pickup truck as a late 1990s white and gray pickup. Degner knew the
two men were "possibly staying" with some friends or relatives on old Highway 105. Degner
located the truck, but the two men "took off on [him]."

 Degner put out a bulletin over the police radio. He received a phone call from an
officer who told him Talley's girlfriend, Amy Dupree, was in jail. Another officer gave
Degner information that led him to an apartment. Degner testified he had information that
Talley had stayed at the apartment before and was dating whoever lived there.

 Degner saw the truck in the parking space near the apartment. Several deputies were
already there watching for Talley. Degner explained he and another officer noticed the
apartment door was "already ajar." The time was 4 a.m., and there were no lights on in the
apartment.

 Peering through windows, the officers could see two people lying down with their
heads away from the window. Degner testified the men "were the same general description
of the guys [he] had been looking for." Degner testified the deputies decided to execute on
the felony arrest warrant for Talley.

 As they entered the apartment, Degner saw a yellow duffel bag on the side of the sofa.
"[O]n top of the duffel bag was a revolver pistol." Degner recovered the weapon for safety
reasons and stuck it in his belt. A backpack was on the sofa; the backpack was open, and on
top of it were items of "drug paraphernalia." 

 The officers located the two men asleep in the bedroom. A pistol lay between their
heads. After arresting the suspects, the officers took the duffel bag and the backpack to the
Conroe office and searched them. The duffel bag contained ammunition. The backpack
contained drugs and Talley's birth certificate.

 Talley testified at the suppression hearing. He explained he had been dropped off at
the apartment, which had no electricity. Later, a man named Rammage entered the
apartment. Talley testified he closed the door and the blinds in the bedroom and told
Rammage that he was going to sleep.

 When the prosecutor stated to the trial judge that Talley's girlfriend lived at the
apartment and "that's where he stays," Talley interjected, " I had my own house." He did not
testify he lived at the apartment or was a guest there, and he did not explain how he got into
the apartment.

Standard of Review 


 An appellate court reviews a ruling on a motion to suppress under an abuse of
discretion standard and views the facts in the light most favorable to the trial court's decision. 
Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). Almost total deference is
given to a trial court's express or implied determination of historical facts, but the court's
application of the law of search and seizure to those facts is reviewed de novo. Id. The trial
court's ruling will be affirmed if the ruling is reasonably supported by the record and is
correct under any theory of law applicable to the case. Young v. State, 283 S.W.3d 854, 873
(Tex. Crim. App. 2009), cert. denied, Young v. Texas, No. 09-6406, 2009 WL 2920880
(2009) (not yet released for publication). 

Motion to Suppress


 Talley asserted in his motion to suppress that the warrantless search of his residence 
violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution and his rights under article I, sections 9, 10, and 19 of the Texas
Constitution. Talley contends that any tangible evidence was seized without warrant,
probable cause, or other lawful authority.

Analysis


 Talley argues on appeal that officers may not search for the subject of an arrest
warrant in the home of a third party unless the officers have a search warrant. He relies on
Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). 

 Talley's motion in the trial court stated, however, that the residence was his. He did
not raise the issue of the warrantless search of a third person's residence in the trial court. 
The general statements in the motion to suppress would not have alerted the trial court to the
specific complaint under Steagald regarding the search of a third party's residence without
a search warrant. See generally Mbugua v. State, No. 01-07-00690-CR, 2009 WL 2634596,
at *7 (Tex. App.--Houston [1st Dist.] Aug. 21, 2009, pet. filed) (not yet released for
publication). Because Talley's complaint on appeal in issue one does not comport with what
he presented to the trial court, he failed to preserve this complaint. See Tex. R. App. P.
33.1(a); Resendez v. State, No. PD-0917-08, 2009 WL 3365656, at *4 (Tex. Crim. App. Oct.
21, 2009) (not yet released for publication).

 Even if the motion is considered sufficient to preserve this argument, Talley's reliance
on Steagald is misplaced. Steagald involved a situation in which police, searching for the
person named in an arrest warrant, entered the home of a third party and discovered evidence
that incriminated the homeowner. Steagald, 451 U.S. at 205-07. The person named in the
arrest warrant was not at the residence. Id. at 206. Indicted on federal drug charges, the
homeowner raised a Fourth Amendment challenge to the search. Id. at 211-12. The Supreme
Court limited its holding in addressing the issue to the homeowner's challenge: "the narrow
issue before us is whether an arrest warrant -- as opposed to a search warrant -- is adequate
to protect the Fourth Amendment interests of persons not named in the warrant, when their
homes are searched without their consent and in the absence of exigent circumstances." 
Steagald, 451 U.S. at 212. The Court explained that "[t]he issue here, however, is not
whether the subject of an arrest warrant can object to the absence of a search warrant when
he is apprehended in another person's home, but rather whether the residents of that home
can complain of the search." Id. at 219. The Court concluded that the homeowner's Fourth
Amendment rights were violated. Steagald, 451 U.S. at 216. In this case, Talley was the
person named in the arrest warrant. 

 Nevertheless, Talley argues that, absent an exception, a warrant is required to search
persons, houses, papers, and effects. The State stipulated there was no search warrant. 
Therefore, Talley asserts, the burden shifted to the State to prove the reasonableness of the
warrantless search.

 A defendant who seeks to suppress evidence obtained in violation of the Fourth
Amendment must first show that he personally had a reasonable expectation of privacy in the
place the government invaded. Luna v. State, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008),
cert. denied, Luna v. Texas, 130 S.Ct. 72, 175 L.Ed.2d 51 (2009); Granados v. State, 85
S.W.3d 217, 222-23 (Tex. Crim. App. 2002). The burden to prove a legitimate expectation
of privacy rests with the defendant. Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996 (citing Calloway v. State, 743 S.W.2d 645, 650 (Tex. Crim. App. 1988)). Whether a
defendant has a legitimate expectation of privacy to contest a search and seizure is a question
of law reviewed de novo. Parker v. State, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). A
defendant must show two things: (a) he had an actual, subjective expectation of privacy,
exhibited by measures taken to protect the privacy of the property in question; and (b) the
subjective expectation of privacy is one that society is prepared to recognize as reasonable.
See Granados, 85 S.W.3d at 223; Davis v. State, 119 S.W.3d 359, 366-68 (Tex. App.--Waco
2003, pet. ref'd) (genuine intention to preserve something as private). 

 Talley was in the apartment that night and had stayed there before. He did not testify
he lived there or was a co-resident; instead, he stated he had his own house. Tally's motion,
however, asserted the apartment was his. The person whose name was on the lease was his
girlfriend, Amy Dupree, and she was in jail. Under the circumstances, the trial court could
reasonably conclude that, even though Talley may have had another residence, the apartment
was the place he lived at that time. "[F]or Fourth Amendment purposes, an arrest warrant
founded on probable cause implicitly carries with it the limited authority to enter a dwelling
in which the suspect lives when there is reason to believe the suspect is within." Payton v.
New York, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Furthermore, the
circumstances confronting the officers support the trial court's ruling. Degner was in pursuit
of Talley, a fugitive believed to be armed and dangerous, who had fled from the deputy in
a truck found parked in front of the apartment. The apartment door was ajar, and Degner
identified the suspect through the window. The exigent circumstances doctrine justifies the
entry into the apartment without a search warrant under the circumstances. See United States
v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). 

 Once in the apartment, the deputies saw the open backpack in plain view on the couch. 
The drug paraphernalia on top of the open backpack consisted of items the deputies could
have concluded were associated with contraband and criminal activity. The search and
seizure satisfied the plain view doctrine, which requires (1) that law enforcement officials
have a right to be where they are, and (2) that it is immediately apparent that the item seized
constitutes evidence. Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); Bouyer
v. State, 264 S.W.3d 265, 269 (Tex. App.--San Antonio 2008, no pet.). "If an item is in plain
view, neither its observation nor its seizure involves any invasion of privacy. The rationale
of the plain view doctrine is that if contraband is left in open view and is observed by a
police officer from a lawful vantage point, there has been no invasion of a legitimate
expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment." 
Bouyer at 269 (citations omitted); see also Bower v. State, 769 S.W.2d 887, 897 (Tex. Crim.
App. 1989), overruled on other grounds, Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App.
1991)) (holding that what person knowingly exposes to public even in his own home is not
search subject to Fourth Amendment). In addition, Talley did not establish he had any
expectation of privacy in the open backpack, and the police could seize and search it. See
Oles v. State, 993 S.W.2d 103, 110 (Tex. Crim. App. 1999) (Once it is determined that police
lawfully seized an arrestee's personal effects, his expectation of privacy is diminished in
those effects until "he can and does exhibit subjective expectations through his conduct,
presumably at the time of release from detainment or incarceration."). 

 Talley contends further that the trial judge erred in denying the motion to suppress

because the record reflects that no arrest warrant was exhibited to the trial judge. He relies
on Gant v. State, 649 S.W.2d 30, 32-33 (Tex. Crim. App. 1983). The Court stated in Gant
that "when an accused objects to admission of evidence on the ground that it is tainted by a
warrantless arrest and the State relies on an arrest warrant, in the absence of waiver,
reviewable error will result unless the record reflects that the arrest warrant was exhibited
to the trial judge for a ruling." Id. at 33. Here, Talley did not object at the suppression
hearing to the deputy's testimony that he had an arrest warrant for Talley. Further, later cases
have held that if the defendant seeks to suppress evidence on the basis of an illegal arrest, the
defendant has the initial burden of proof to rebut the presumption of proper police conduct. 
Young, 283 S.W.3d at 872. "The defendant may satisfy this burden by establishing that he
was arrested without a warrant." Id.; see also Blondett v. State, 921 S.W.2d 469, 472 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd) (citing Russell v. State, (1) 717 S.W.2d 7, 9 (Tex.
Crim. App.1986)) ("A movant in a motion to suppress alleging a lack of probable cause must
initially produce evidence that a warrantless arrest occurred."). Once the defendant meets this
burden, the burden shifts to the State to either produce evidence of a warrant or prove the
reasonableness of the arrest. Young, 283 S.W.3d at 872. Talley did not meet his burden of
showing the arrest was without a warrant. The officer testified he had a felony arrest warrant
for Talley. See id. Because Talley did not meet this initial burden, the State was not required
to physically display the arrest warrant to the trial court. See Blondett, 921 S.W.2d at 472-73. 

 We overrule issues one, two, and three. The judgment is affirmed.

 AFFIRMED. 

 ___________________________

 DAVID GAULTNEY

 Justice


Submitted on January 21, 2010

Opinion Delivered February 17, 2010

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Russell was disavowed on other grounds by Handy v. State, 189 S.W.3d 296, 299 n.2
(Tex. Crim. App. 2006).