NUMBER 13-09-178-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JOEY GARZA, JR. AKA JOEY A. GARZA Appellant,

AKA JOEY GARCIA GARZA, JR. 

AKA AMOUSE REYNA, 


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 156th District Court 

of Live Oak County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 A grand jury indicted appellant, Joey Garza, Jr., for the offense of unlawful
possession of a firearm by felon, a third-degree felony. See Tex. Penal Code Ann. §
46.04(a)(1), (e) (Vernon Supp. 2009). Pursuant to a plea agreement, (1) appellant pleaded
guilty to the primary offense and "true" to the enhancement allegation. The trial court
assessed punishment at eight years' imprisonment, plus a $2,500 fine. Appellant raises
four issues for our consideration. We affirm. 

I. Motion to Suppress Evidence


 In his first issue, appellant contends that the trial court erred in denying his motion
to suppress in which he sought to suppress evidence of the firearms, which the police
seized from the vehicle he was driving.

A. Standard of Review

 In St. George v. State, the court of criminal appeals stated:

 Whether a specific search or seizure was reasonable is a mixed
question of law and fact and is conducted de novo. We review a trial court's
ruling on a motion to suppress evidence under a bifurcated standard of
review. We do not engage in our own factual review; rather, the trial judge
is the sole trier of fact and judge of credibility of the witnesses and the weight
to be given to their testimony. Trial courts are given almost complete
deference in determining historical facts. We review the record to determine
whether the trial court's ruling is supported by the record and correct under
some theory of law applicable to the case.

237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citations omitted). When, as in this case,
"a trial court makes explicit fact findings, the appellate court determines whether the
evidence (viewed in the light most favorable to the trial court's ruling) supports these fact
findings." State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review
"the trial court's legal ruling de novo unless the trial court's supported-by-the-record explicit
fact findings are also dispositive of the legal ruling." Id.

B. The Evidence

 On October 4, 2008, George West police officer Jorge Medina stopped appellant
for speeding. Appellant could not produce a driver's license or proof of insurance and had
no identification. When Officer Medina asked him for his name and birth date, he replied,
"Joey Garcia 02-16-1981" Officer Jason Lee, who had arrived at the scene, asked
appellant's two passengers for appellant's name, and they said it was Joey Garza. Hearing
this, Officer Medina again asked appellant for his name, and he said it was "Joey Garza,
Jr." At that point, Officer Medina arrested him for failure to identify. While Officer Lee took
appellant to the county jail, Officer Medina searched the vehicle and seized a sawed-off
shotgun, a revolver, and an AK-47 from the trunk.

C. Applicable Law and Analysis

 Appellant contends (1) "he was illegally detained because the officer went beyond
detention to affect a bogus arrest," and (2) "he was arrested for failing to properly identify
himself after extensive questioning, which exceeded the scope of the traffic stop." A
person commits the offense of failure to identify "if he intentionally gives a false or fictitious
name, . . . to a peace officer who has . . . (2) lawfully detained the person . . . ." Tex. Penal
Code Ann. § 38.02(b), (2) (Vernon Supp. 2009). Thus, if appellant gave Officer Medina
a false or fictitious name while lawfully detained, then his arrest for failure to identify was
lawful and not "bogus." See id.

 "Appellate courts review the legal determination of detention, reasonable suspicion,
and probable cause under the Fourth Amendment de novo while granting great deference
to a trial court's factual findings." State v. Sheppard, 271 S.W.3d 281, 286-87 (Tex. Crim.
App. 2008). Routine traffic stops are analogous to investigative detentions and are
governed by Terry v. Ohio, 392 U.S. 1 (1968). Bracken v. State, 282 S.W.3d 94, 97 n.2
(Tex. App.-Fort Worth 2009, pet. ref'd) (citing Berkemer v. McCarty, 468 U.S. 420, 439
(1984)). A Terry analysis has two inquiries: "(1) whether the officer's action was justified
at its inception; and (2) whether it was reasonably related in scope to the circumstances
that justified the initial interference." Perales v. State, 117 S.W.3d 434, 438 (Tex.
App.-Corpus Christi 2003, pet. ref'd) (citing Terry, 392 U.S. at 19-20).

1. Whether Officer Medina's Action was Justified at its Inception


 "As a general matter, the decision to stop an automobile is reasonable where the
police have probable cause to believe that a traffic violation has occurred." Whren v.
United States, 517 U.S. 806, 810 (1996); Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim.
App. 2000). In this case, Officer Medina stopped appellant for speeding, a traffic violation
that occurred in his presence. Thus, the trial court could have reasonably found that
Officer Medina had probable cause for the traffic stop. See Perales, 117 S.W.3d at 439.

2. Whether Officer Medina's Action was Reasonably Related in Scope to the
Circumstances Justifying the Interference in the First Place


 Under the second Terry inquiry, "an investigative detention must be temporary and
last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer,
460 U.S. 491, 500 (1983); Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). 
"Once an officer concludes the investigation of the conduct that initiated the stop, a
continued detention is permitted only if there is reasonable suspicion to believe another
offense has been or is being committed." Saldivar v. State, 209 S.W.3d 275, 282 (Tex.
App.-Fort Worth 2006, no pet.) (emphasis in original). We have stated that, "[a]fter a bona
fide [stop] for speeding, an officer may then make an arrest if another offense is discovered
during the investigation." Perales, 117 S.W.3d at 439. The United States Supreme Court
has refused to place any rigid time limits on Terry stops; "instead, the issue is 'whether the
police diligently pursued a means of investigation that was likely to confirm or dispel their
suspicions quickly, during which time it was necessary to detain the defendant.'" Kothe, 152
S.W.3d at 64-65 (quoting United States v. Sharpe, 470 U.S. 675, 685-86 (1985)).

 Here, Officer Medina requested appellant's driver's license and proof of insurance. 
In a traffic stop situation, an officer may demand this information. Davis v. State, 947
S.W.2d 240, 245 n.6 (Tex. Crim. App. 1997). Appellant's response to Officer Medina that
he did not have any identification gave Officer Medina reasonable suspicion to believe he
had committed another offense; i.e., failure to produce a driver's license. See Tex. Transp.
Code Ann. § 521.025 (Vernon 1999). (2) When "an officer conducts a valid detention for
investigation and then develops a reasonable suspicion that the detainee is engaged in
criminal activity, continued detention is justified." Perales, 117 S.W.3d at 439. During the
continued detention, Officer Medina asked appellant for: identification; ownership of the
vehicle; his destination; and the identity of the front-seat passenger. During a stop for a
traffic violation by the driver, officers may question the driver, request information on the
vehicle's ownership, and ask about the driver's destination and the trip's purpose. Kothe,
152 S.W.3d at 63. The detaining officer may also ask the vehicle's occupants their
identities and travel plans. Id. at 64 n.36. Officer Medina arrested appellant upon
determining that he had given a false name. Thus, the evidence does not show that the
detention lasted longer than was necessary to effect the purpose of the stop and to
determine appellant's true identity. See Royer, 460 U.S. at 500; Kothe, 152 S.W.3d at 63;
see Sharpe, 470 U.S. at 685-86 (declining to "establish a per se rule that a 20-minute
detention is too long" under Terry ). 

 We conclude that Officer Medina diligently pursued a means of investigation that was
likely to either confirm or dispel his suspicions quickly, during which time it was necessary
to detain appellant. See Kothe, 152 S.W.3d at 64-65. The evidence does not show Officer
Medina was purposefully prolonging the detention or that the stop lasted longer than
necessary to effect the purpose of his investigation. Therefore, the investigative detention
was reasonably related in scope to the circumstances that justified the stop and detention
in the first place. See Terry, 392 U.S. at 29; St. George, 237 S.W.3d at 726; Kothe, 152
S.W.3d at 63. Viewing the totality of the circumstances in the light most favorable to the
trial court's ruling, we conclude that Officer Medina's actions were reasonable under the
circumstances, and that the detention as a whole was reasonable.

 By this same issue, appellant contends that he was illegally searched because no
probable cause existed. "A peace officer may arrest an offender without a warrant for any
offense committed in his presence or within his view." Tex. Code. Crim. Proc. Ann. art.
14.01(b) (Vernon 2005). When a peace officer makes a lawful arrest, he may search, as
incident to that arrest, the person arrested. Chimel v. California, 395 U.S. 752, 763 (1969);
State v. Stauder, 264 S.W.3d 360, 364 (Tex. App.-Eastland 2008, pet. ref'd). Officer
Medina arrested appellant for failure to identify. Because appellant committed the offense
in Officer Medina's presence, he could lawfully arrest him and search him incident to the
arrest.

 Appellant also argues "there was no consent given to search the vehicle." A
defendant may have standing to challenge the determinative reasonableness of the seizure
involved in his own detention and yet lack standing to challenge a search of the vehicle he
was driving. Maysonet v. State, 91 S.W.3d 365, 374 (Tex. App.-Texarkana 2002, pet.
ref'd). The court of criminal appeals has stated that "[o]nly after a defendant has
established his standing to complain may a court consider whether he has suffered a
substantive Fourth Amendment violation." Kothe, 152 S.W.3d at 59. (3) "To challenge a
search, the defendant must have a legally protected right to the expectation of privacy." 
Parker v. State, 182 S.W.3d 923, 925 (Tex. Crim. App. 2006). In determining whether a
defendant has a reasonable expectation of privacy that government action has invaded, "we
ask whether the defendant had a subjective expectation of privacy in the place searched. 
If the answer is yes, then we ask whether the defendant's expectation of privacy is one that
society recognizes as reasonable or justifiable under the circumstances." Id. at 925-26
(citing Smith v. Maryland, 442 U.S. 735, 740 (1979)).

 Here, appellant told Officer Medina that the vehicle belonged to his mother. The
evidence did not show that appellant borrowed the vehicle from his mother or that he gained
possession of it from her with her consent or from someone authorized to give permission
to drive it. Appellant's mother was not one of the passengers in the vehicle. We hold,
based upon these facts, that appellant did not have a reasonable expectation of privacy in
his mother's vehicle and, therefore, lacks standing to challenge its search. See Matthews
v. State, 165 S.W.3d 104, 112 (Tex. App.-Fort Worth 2005, no pet.) (stating that a
defendant "has standing to challenge the search of a car he does not own if he shows that
he gained possession of the car from the owner with the owner's consent or from someone
authorized to give permission to drive it"), see also Parker, 182 S.W.3d at 927 (stating that
a person has an "expectation of privacy in a car that he borrowed from his girlfriend"). 
Therefore the trial court did not err in overruling the motion to suppress. The first issue is
overruled.

II. Sufficiency of the Evidence


 In his second issue, appellant challenges the sufficiency of the evidence to support
his conviction. "No trial court is authorized to render a conviction in a felony case,
consistent with Article 1.15, based upon a plea of guilty 'without sufficient evidence to
support the same.'" Menefee v. State, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009); see Tex.
Code Crim. Proc. Ann. § 1.15 (Vernon 2005). Evidence offered to support a guilty plea
may take many forms. Menefee, 287 S.W.3d at 13. The defendant may consent to the
proffer of evidence in testimonial or documentary form, or to an oral or written stipulation
of what the evidence against him would be, without necessarily admitting to its veracity or
accuracy. Id. This proffer or stipulation of evidence will suffice to support the guilty plea so
long as it embraces every constituent element of the charged offense. Id. The defendant
may also enter a sworn, written statement, or may testify under oath in open court,
specifically admitting his culpability or at least acknowledging generally that the allegations
against him are in fact true and correct. Id. So long as the judicial confession covers all of
the elements of the charged offense, it will suffice to support the guilty plea. Id.

 A person commits the offense of unlawful possession of a firearm by a felon when
he possesses a firearm after he has been convicted of a felony and before the fifth
anniversary of his release from confinement following conviction or his release from
supervision under community supervision, parole, or mandatory supervision, whichever date
is later. See Tex. Penal Code Ann. § 46.04(a)(1). Section 12.42(a)(3) of the penal code
provides, in relevant part, that "if it is shown on the trial of a . . . third-degree felony that the
defendant has been once before convicted of a felony, on conviction he shall be punished
for a second-degree felony." Id. § 12.42(a)(3) (Vernon Supp. 2009). 

 After the trial court accepted appellant's guilty plea to the primary offense and his
plea of "true" to the enhancement allegation, the trial court admitted into evidence the
stipulation of evidence, which is signed by appellant and sworn before the clerk of the
district court. The stipulation stated, in relevant part, that "I judicially confess to the following
facts and agree and stipulate that these facts are true and correct and constitute the
evidence in this case[.]" Appellant judicially confessed that on or about October 4, 2008,
he "did then and there, having been convicted of the felony offense of Theft, . . .
intentionally or knowingly possess[ed] a firearm before the fifth anniversary of [his] release
from confinement following conviction of said felony." He also judicially confessed "that,
prior to the commission of the aforesaid offense, on the 30th day of July, A.D., 2007, . . .
[he] was convicted of the felony offense of Tampering with Government Records
Defraud/Harm." The stipulation included Officer Medina's police report, which described
the facts surrounding the stop of the vehicle driven by appellant, his arrest, and the
discovery of the weapons in the trunk. Because the stipulation of evidence embraced every
constituent element of the charged offense and the enhancement, it sufficed to support the
guilty plea and the plea of true. See Menefee, 287 S.W.3d at 13. Issue two is overruled.

III. Denial of Community Supervision


 In his third issue, appellant contends that the trial court abused its discretion when
it denied his request for community supervision and imposed an eight-year prison sentence. 
Article 42.12, section 3(a) of the code of criminal procedure broadly authorizes a trial judge,
after a guilty plea, to place an eligible defendant on community supervision whenever he
or she deems it "in the best interest of justice, the public, and the defendant" to do so. Ivey
v. State, 277 S.W.3d 43, 45 (Tex. Crim. App. 2009); see Tex. Code Crim. Proc. Ann. art.
42.12, § 3(a) (Vernon Supp. 2009). The granting of community supervision is a privilege,
not a right, and the decision to grant community supervision is wholly discretionary. Speth
v. State, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999). In reviewing a trial court's
determination of the appropriate punishment in any given case, "a great deal of discretion
is allowed the sentencing judge." Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App.
1984). It is "the general rule that as long as a sentence is within the proper range of
punishment it will not be disturbed on appeal." Id. A trial court abuses its discretion only
if there is no evidence or factual basis for the punishment imposed. Id.

 Appellant pleaded guilty to unlawful possession of a firearm by a felon, which was
enhanced to a second-degree felony. The punishment range for a second-degree felony
is imprisonment for a term of not more than twenty years or less than two years, and a fine
not to exceed $10,000. See Tex. Penal Code Ann. § 12.33(a), (b) (Vernon 2003). The
punishment assessed by the court--confinement for eight years--is within the punishment
range established by the legislature for a person convicted of a second-degree felony. See
id. The stipulation of evidence included appellant's judicial confession to the primary
offense and the enhancement allegation. Because there is a factual basis for the
punishment imposed, we hold the trial court did not abuse its discretion by imposing an
eight-year prison sentence. See Jackson, 680 S.W.2d at 814. Issue three is overruled.

VI. Cruel and Unusual Punishment


 In his fourth issue, appellant contends that the eight-year sentence violated the
Eighth Amendment prohibition against cruel and unusual punishment. See U.S. Const.
amend. VIII. The Eighth Amendment does not require strict proportionality between the
crime and the sentence; rather, it forbids extreme sentences that are "grossly
disproportionate" to the crime. Ewing v. California, 538 U.S. 11, 23 (2003). The precise
contours of the "grossly disproportionate" standard are unclear, but it applies only in
"exceedingly rare" and "extreme" cases. See Lockyer v. Andrade, 538 U.S. 63, 73 (2003). 
Texas courts have traditionally held that, as long as the punishment assessed falls within
the punishment range prescribed by the legislature in a valid statute, the punishment is not
excessive. See Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); Trevino v.
State, 174 S.W.3d 925, 928 (Tex. App.-Corpus Christi 2005, pet. ref'd); see also Escochea
v. State, 139 S.W.3d 67, 80 (Tex. App.-Corpus Christi 2004, no pet.). (4)

 Appellant's sentence fell within the punishment range for a second-degree felony. 
See Tex. Penal Code Ann. § 12.33(a). However, that does not end the inquiry. Texas
courts recognize that a prohibition against a grossly disproportionate sentence survives
under the federal constitution apart from any consideration whether the punishment
assessed is within the statute's punishment range. Winchester v. State, 246 S.W.3d 386,
388 (Tex. App.-Amarillo 2008, pet. ref'd); Mullins v. State, 208 S.W.3d 469, 470 (Tex.
App.-Texarkana 2006, no pet.). 

 This Court has recognized that "the viability and mode of application of proportionate
analysis . . . has been questioned since the Supreme Court's decision in Harmelin v.
Michigan, 501 U.S. 957 (1991)." Trevino, 174 S.W.3d at 928 (citing McGruder v. Puckett,
954 F.2d 313, 315-16 (5th Cir. 1992) (discussing the various opinions issued in Harmelin
and their impact on the Solem decision (5))); see Sullivan v. State, 975 S.W.2d 755, 757-58
(Tex. App.-Corpus Christi 1998, no pet.) (discussing the implications of the Harmelin
opinion and reviewing the proportionality of defendant's sentence under the Solem and
McGruder tests). Assuming, arguendo, the viability of a proportionality review, as we did
in Sullivan, we will apply both the Solem and McGruder tests to the facts of this case. See
Sullivan, 975 S.W.2d at 757-58. (6) In both Solem and McGruder, we look first at the gravity
of the offense and the harshness of the penalty. Solem v. Helm, 463 U.S. 272, 290-91
(1983); McGruder, 954 F.2d at 316.

1. Gravity of the Offense

 We judge the gravity of the offense in light of the harm caused or threatened to
society and the offender's culpability. Moore v. State, 54 S.W.3d 529, 542 (Tex. App.-Fort
Worth 2001, pet. ref'd) (citing Solem, 463 U.S. 291-92). With respect to appellant's
culpability, the stipulation of evidence showed that Officer Medina found three firearms in
the trunk of the car that appellant was driving. Further, appellant judicially confessed to the
offense. 

 With respect to the harm caused or threatened to society, the purpose of the offense
of unlawful possession of firearm by felon is to "prohibit all felons from possessing weapons
at any time at all places away from their residence." State v. Mason, 980 S.W.2d 635, 638-39 (Tex. Crim. App. 1998). We conclude that the gravity of the offense weighs in favor of
a finding that the punishment was not excessive. See Waddy v. State, 880 S.W.2d 458,
460 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd) (stating that "[a]nytime a person has
possession of a firearm, the threat to public safety remains . . . .").

2. Harshness of the Penalty

 When conducting an Eighth Amendment proportionality analysis, we may consider
the sentence imposed in light of the accused's prior offenses. Winchester, 246 S.W.3d at
390; Culton v. State, 95 S.W.3d 401, 403 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd).
Appellant pleaded guilty to the third-degree felony offense of possession of a firearm by
felon. He pleaded "true" to the enhancement allegation, which elevated the punishment
range to a second-degree felony. In light of the seriousness of the crime to which appellant
pleaded guilty and the fact that he has a criminal history of two other felony convictions, we
cannot say his eight-year sentence is disproportionate to the offense. We therefore find
that his punishment is not grossly disproportionate to the offenses for which he was
convicted. This finding ends our analysis under McGruder. See McGruder, 954 F.2d at
316; see also Sullivan, 975 S.W.2d at 757. Because there is no evidence in the appellate
record of the sentences imposed for other similar crimes in Texas or for the same crimes
in other jurisdictions, we cannot perform a comparative evaluation using the remaining
Solem factors. See Solem, 463 U.S. at 292; see also Sullivan, 975 S.W.2d at 757-58. 
Therefore, we hold that appellant's punishment is neither grossly disproportionate nor cruel
and unusual. We overrule issue four.

V. Conclusion


 We affirm the trial court's judgment. 

 

 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed 25th

day of March, 2010.
1. On March 13, 2009, the trial judge signed a document called "TRIAL COURT'S AMENDED
CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL" and placed his initials on the line corresponding
to the preprinted statement: "Is a plea-bargain case, but matters were raised by written motion filed and ruled
on before trail [sic] and not withdrawn or waived, and the defendant has the right of appeal."
2. Section 521.025 of the transportation code provides for a driver's license to be carried by the driver
while operating a motor vehicle and exhibited upon demand by a peace officer. See Tex. Transp. Code Ann.
§ 521.025(a) (Vernon 1999). On the facts of this case, Officer Medina had authority to request a driver's
license. See Meeks v. State, 692 S.W.2d 504, 508 (Tex. Crim. App. 1985). 
3. In Kothe, the court of criminal appeals stated that an appellate court may raise the issue of standing
on its own, and it may analyze that issue as a part of the Fourth Amendment claim presented. Kothe v. State,
152 S.W.3d 54, 60 (Tex. Crim. App. 2004).
4. Vera v. State, Nos. 13-05-169, 170-CR, 2006 WL 5181930, at *3 (Tex. App.-Corpus Christi Aug. 29,
2008, pet. ref'd) (mem. op., not designated for publication).
5. See Solem v. Helm, 463 U.S. 272 (1983).
6. See also McGiffin v. State, No. 13-05-561-CR, 2006 WL 2294553, at *1 (Tex. App.-Corpus Christi,
Aug. 10, 2006, no pet.) (mem. op., not designated for publication).